**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS**

| | | |
|---|---|---|
| **CASH TODAY LLC, and** | ) | |
| **MONEYBOX ATM NEVADA LLC,** | ) | |
| | ) | |
| **Plaintiffs,** | ) | **Case No.** |
| | ) | |
| **vs.** | ) | |
| | ) | |
| **MTE LLC a/k/a MTE PLATINUM CASH** | ) | |
| **LLC, and MICHAEL W. TYLER, SR.** | ) | |
| | ) | |
| **Defendants.** | ) | |

**COMPLAINT**

Plaintiffs CASH TODAY LLC ("Cash Today") and MONEYBOX ATM NEVADA LLC ("MoneyBox," and collectively with Cash Today, "Plaintiffs"), for their causes of action against Defendants MTE LLC a/k/a MTE PLATINUM CASH LLC ("MTE") and Michael W. Tyler, Sr. ("Tyler," and collectively with MTE, "Defendants") state as follows:

**PARTIES, JURISDICTION AND VENUE**

1.      Cash Today is an Arizona limited liability company whose sole member is Sue Klopf, an individual who resides in Iowa.

2.       MoneyBox is a Nevada limited liability company whose sole member is Patrick Klopf, an individual who resides in Iowa.

3.      MTE is a Kansas limited liability company whose members, upon information and belief, are Tyler and Michael W. Tyler, Jr., individuals who both reside in Kansas.  MTE also does business as MTE PLATINUM CASH LLC, a Nevada limited liability company whose status is revoked with the Nevada Secretary of State.  MTE can be served by service on Tyler at his residence located at 435 S. 100th Street, Edwardsville, Kansas 66111.

4.      Tyler is an individual that resides in Kansas, who can be served at his residence

located at 435 S. 100th Street, Edwardsville, Kansas 66111.

5.     This is a civil action seeking money damages and related relief pursuant to the causes of action identified herein.  This Court has diversity jurisdiction over this civil action pursuant to 28 U.S.C. § 1332(a)(1) because the matter in controversy exceeds $75,000.00, exclusive of interest and costs, and because, upon information and belief, the citizenship of each of Plaintiffs is diverse from each of Defendants.

6.     This Court has personal jurisdiction over each of Defendants because each resides in Kansas.

7.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)(1) because each of Defendants resides in Kansas in this judicial district.

## FACTS COMMON TO ALL COUNTS

8.     On or about March 11, 2019, MTE, as seller, and Cash Today, as buyer, reached an agreement pursuant to which MTE agreed to sell and Cash Today agreed to buy certain ATM routes in Las Vegas, Nevada and related assets, including $200,00.00 of cash, contracts, equipment, placements and information related to the ATM routes (collectively, the "Purchased ATM Assets").

9.     The Purchased ATM Assets consisted of approximately 29 ATM relationships.

10.     MTE's and Cash Today's agreement relating to the Purchased ATM Assets was memorialized in the Asset Purchase Agreement attached as **Exhibit A** and incorporated herein by this reference.

11.     Sue Klopf, on behalf of Cash Today, executed the Asset Purchase Agreement.

12.     The executed Asset Purchase Agreement was sent to MTE by text message to Tyler, who responded to the text message by providing wire instruction details for Cash Today to

make payment.

13.     MTE did not execute the Asset Purchase Agreement, but by both express agreement and intentional action, MTE agreed to the purchase terms stated in the Asset Purchase Agreement.

14.     Pursuant to the agreement of the parties, including as identified in the Asset Purchase Agreement, Cash Today paid MTE $615,000.00 by two separate wire transfers in the amounts of $145,000.00 and $470,000.00 executed on March 13, 2019.  A true and correct copy of the wire transfer authorizations that were ultimately executed are attached collectively as **Exhibit B** and incorporated herein by this reference.

15.     As reflected in the wire transfer authorizations, the wire transfers were made to a "seller of business" for the purpose of "business purchase."

16.     As reflected in the wire transfer authorizations, the wire transfers were made to an MTE bank account at Security Bank of Kansas City in Kansas City, Kansas.

17.     MTE accepted payment of $615,000.00 as reflected in the Asset Purchase Agreement and as agreed by MTE and Cash Today.

18.     Cash Today made payment of $615,000.00 to purchase the Purchased ATM Assets and in consideration of MTE's promises to provide the related services identified in the Asset Purchase Agreement.

19.     Cash Today would not have made payment of $615,000.00 unless such payment was for purchase of the Purchased ATM Assets and in consideration of the identified services.

20.     MTE, through Tyler, represented and agreed that payment of $615,000.00 was for Cash Today's purchase of the Purchased ATM Assets and in consideration of MTE's promise to provide the identified services.

21.     As reflected in the Asset Purchase Agreement, and as agreed between MTE and Cash Today, MTE was obligated upon closing to "transfer all contracts, equipment, placements and information it currently owns and controls."

22.     The Purchased ATM Assets included all ATM routes and related assets owned by MTE in Las Vegas, Nevada.

23.     As also reflected in the Asset Purchase Agreement, and as also agreed between MTE and Cash Today, MTE was obligated upon closing to "provide $200,000.00 vault cash, 3 weeks of employee training and 2 months of accounting/bookkeeping services."

24.     The "$200,000.00 vault cash" included cash that was in circulation relating to the 29 ATM relationships, including in MTE's bank vault account, in ATM machines, or otherwise in transition between the vault account or in ATM machines.

25.     MTE and Cash Today agreed that upon closing Cash Today shall be added as an authorized party with respect MTE's bank vault account, with sole right to possession and control of MTE's bank vault account.

26.     Upon information and belief, at or about the time of the closing of the sale, which was on or about March 13, 2019, MTE identified the amount of cash in circulation and identified that approximately $250,000.00 was in circulation, rather than the $200,000.00 identified in the Asset Purchase Agreement and agreed to be sold by MTE to Cash Today.

27.     MTE and Cash Today agreed that Cash Today shall retain possession and benefit of the additional approximately $50,000.00 of cash in circulation in exchange for payment of the amount of the additional cash in circulation.

28.     Cash Today and its successor-in-interest MoneyBox paid MTE the amount of the additional cash in circulation.

29.     After the closing of the sale of the Purchased ATM Assets, MTE added Cash Today as an authorized party with respect to MTE's bank vault account, transferred dominion and control over the ATMs and related equipment relating to the Purchased ATM Assets to Cash Today, and transferred dominion and control of the ATM routes and related relationships relating to the Purchased ATM Assets to Cash Today.

30.     Upon closing of the sale of the Purchased ATM Assets, MTE was required to fully transfer all the Purchased ATM Assets and related interests of MTE in Las Vegas, Nevada.

31.     After the closing of the sale of the Purchased ATM Assets, MTE had no right to dominion or control over any of the Purchased ATM Assets or related interests formerly owned by MTE, and sold to Cash Today, in Las Vegas, Nevada.

32.     After the closing of the sale of the Purchased ATM Assets, MTE provided Cash Today copies of certain contracts and provided certain information relating to the Purchased ATM Assets.

33.     MTE did not, and has not upon multiple demands by Cash Today, executed the appropriate documents to document transfer of all contracts, equipment, placements and information it owned in Las Vegas, Nevada, as required by the Asset Purchase Agreement and the agreement between MTE and Cash Today.

34.     The Purchased ATM Assets, however, were constructively delivered to Cash Today by MTE, including that MTE turned over dominion and control of the ATM routes and relationships, access to the purchased ATMs, the cash vault account, and the terminal identification numbers for the ATMs.

35.     Cash Today accepted delivery of the Purchased ATM Assets and related interests.

36.     After the closing of the sale of the Purchased ATM Assets, MTE failed to provide

the agreed "3 weeks of employee training and 2 months of accounting/bookkeeping services."

37.     Before the closing of the sale of the Purchased ATM Assets, MTE gave direction regarding and operated the business and relationships relating to the Purchased ATM Assets.

38.     Before the closing of the sale of the Purchased ATM Assets, MTE took the actions, incurred the obligations, and retained the benefits ordinarily taken, incurred, and retained by an owner of ATM route assets relating to the Purchased ATM Assets.

39.     For example, before the closing of the sale of the Purchased ATM Assets, MTE maintained the equipment at its expense, including the ATMs, relating to the Purchased ATM Assets.

40.     For example, before the closing of the sale of the Purchased ATM Assets, MTE received the ATM surcharges and fees ordinarily retained by an owner of ATM route assets relating to the Purchased ATM Assets.

41.     After the closing of the sale of the Purchased ATM Assets, Cash Today gave direction regarding and operated the business and relationships relating to the Purchased ATM Assets.

42.     After the closing of the sale of the Purchased ATM Assets, Cash Today otherwise took the actions, incurred the obligations, and retained the benefits ordinarily taken, incurred, and retained by an owner of ATM route assets relating to the Purchased ATM Assets.

43.     For example, after the closing of the sale of the Purchased ATM Assets, Cash Today maintained the equipment at its expense, including that ATMs, relating to the Purchased ATM Assets.

44.     For example, after the closing of the sale of the Purchased ATM Assets, Cash Today received the ATM surcharges and fees ordinarily retained by an owner of ATM route

assets relating to the Purchased ATM Assets.

45.     In exchange for good and valid consideration, Cash Today transferred its rights as owner of the Purchased ATM Assets to MoneyBox.

46.     In the 16 months following the closing of the sale of the Purchased ATM Assets, Cash Today, then MoneyBox, gave direction regarding and operated the business and relationships relating to the Purchased ATM Assets.

47.     In the 16 months following the closing of the sale of the Purchased ATM Assets, Cash Today, then MoneyBox, operated the business and maintained the relationships concerning the Purchased ATM Assets and took the actions, incurred the obligations, and retained the benefits ordinarily taken, incurred, and retained by an owner of ATM route assets relating to the Purchased ATM Assets.

48.     For example, in the 16 months following the closing of the sale of the Purchased ATM Assets, Cash Today, then MoneyBox, maintained the equipment at its expense, including that ATMs, relating to the Purchased ATM Assets.

49.     For example, in the 16 months following the closing of the sale of the Purchased ATM Assets, Cash Today, then MoneyBox received the ATM surcharges and fees ordinarily retained by an owner of ATM route assets relating to the Purchased ATM Assets.

50.     In those 16 months, neither MTE nor Tyler apparently exercised dominion or control over the Purchased ATM Assets and related business and relationships, except that MTE entered into certain contracts with ATM customers of Cash Today, then MoneyBox.

51.     MTE asserted to Cash Today and MoneyBox that maintaining the same counterparty relationship - MTE rather than Cash Today or MoneyBox - with the ATMS customers would better ensure that the customer would not seek to negotiate contract

concessions often sought with a change in ownership.

52.     During those 16 months, Cash Today, then MoneyBox, acted primarily through Michael Klopf ("Mike Klopf"), who is Sue Klopf's son and Patrick Klopf's brother.

53.     Part of Mike Klopf's responsibilities included loading the various ATM machines with cash.

54.     Unfortunately and unexpectedly, Mike Klopf died on July 20, 2020.

55.     Following Mike Klopf's death, business continued seemingly as usual with MoneyBox acting as the owner and operator of the business and relationships relating to the Purchased ATM Assets.

56.     Following Mike Klopf's death, Travis Milcher, who was introduced to MoneyBox by Tyler, was engaged to load the various ATM machines with cash.

57.     Travis Milcher was paid a per-transaction fee by MoneyBox in payment of his duties as loader, and MoneyBox received the remainder of surcharges and fees except as agreed with third parties, including its ATM customers and ATM service processor.

58.     In addition to, and separate from, the relationships and business associated with the Purchased ATM Assets, MoneyBox developed relationships with other ATM customers and built a separate route of ATM relationships and business (the "Non-Purchased ATM Assets").

59.     ATM route owners use an ATM service processor to perform the data and service functions necessary to complete ATM transactions and to pay surcharges and other fees as directed by the ATM route owner.

60.     Prior to the closing of the sale of the Purchased ATM Assets, MTE used SwypCo, LLC ("SwypCo") as its ATM service processor relating to the Purchased ATM Assets.

61.     MTE encouraged Cash Today to continue to use SwypCo as the ATM service

processor with respect to the Purchased ATM Assets upon closing of the sale of the Purchased ATM Assets.

62.     Cash Today continued to use SwypCo as the ATM service processor with respect to the Purchased ATM Assets upon closing of the sale of the Purchased ATM Assets.

63.     Upon purchase from Cash Today, MoneyBox continued to use SwypCo as the ATM service processor with respect to the Purchased ATM Assets.

64.     MoneyBox also used SwypCo with respect to its ownership of the Non-Purchased Assets.

65.     MoneyBox also owns ATM routes and related assets in Arizona and Iowa.

66.     MoneyBox has a direct contractual relationship with SwypCo.

67.     Cash Today, then MoneyBox, understood that after the closing of the sale of the Purchased ATM Assets, Cash Today, then MoneyBox, had the sole right to give direction to SwypCo relating to the Purchased ATM Assets.

68.     MoneyBox understood that it had the sole right to give direction to SwypCo relating to the Non-Purchased ATM Assets.

69.     Upon information and belief, MTE failed to take the actions necessary to fully relinquish control over the relationship with SwypCo relating to the Purchased ATM Assets.

70.     Upon information and belief, SwypCo identified the Non-Purchased Assets under the same account or collection of accounts as the Purchased ATM Assets.

71.     In the 16 months following the closing of the sale of the Purchased ATM Assets, SwypCo took direction from Cash Today, then MoneyBox, relating to the Purchased ATM Assets.

72.     In the 16 months following the closing of the sale of the Purchased ATM Assets,

SwypCo took direction from MoneyBox relating to the Non-Purchased ATM Assets.

73.     In October 2020, MoneyBox explored possible sale of the remaining Purchased ATM Assets and Non-Purchased ATM Assets.

74.     MoneyBox obtained an appraisal of $365,000.00 for the remaining Purchased ATM Assets and Non-Purchased ATM Assets.

75.     MoneyBox discussed selling the remaining Purchased ATM Assets and Non-Purchased ATM Assets to Travis Milcher.

76.     After MTE and Tyler became aware that MoneyBox had interest in selling the Purchased ATM Assets and Non-Purchased ATM Assets, MTE and Tyler interfered with MoneyBox's sale discussions with Travis Milcher and sought to force a sale to Travis Milcher for $250,000.00.

77.     When MoneyBox refused, MTE and Tyler sought to force a sale to Travis Milcher for $100,000.00.

78.     MoneyBox refused.

79.     MoneyBox discovered when doing its due diligence in preparation for its sale of the Purchased ATM Assets and Non-Purchased ATM Assets that MTE failed to document transfer of the Purchased ATM Assets to Cash Today.

80.     Without the transfer documents, although MoneyBox owned the Purchased ATM Assets, MoneyBox would be unable to evidence ownership with documents to a prospective buyer, which would substantially affect the sale price of the Purchased ATM Assets.

81.     Therefore, MoneyBox made demand on MTE that it provide all documentation necessary to evidence transfer of the Purchased ATM Assets, as was required by the Asset Purchase Agreement and the agreement between MTE and Cash Today relating to purchase of

the Purchased ATM Assets.

82.     MTE refused.

83.     Instead, beginning on or about November 17, 2020, MTE and Tyler exercised dominion and control over the remaining Purchased ATM Assets and the Non-Purchased ATM Assets, including obtaining access to ATM machines, contacting ATM customers, and giving direction to SwypCo to pay the surcharges and fees associated with an owner of the Purchased ATM Assets to MTE or Tyler.

84.     Upon information and belief, MTE and Tyler also, either directly or through agents, exercised dominion and control over the Non-Purchased ATM Assets, including obtaining access to ATM machines, contacting ATM customers, and giving direction to SwypCo that MoneyBox no longer receive the surcharges and fees associated with an owner of the Non-Purchased Assets.

85.     These actions were wrongful and in direct contradiction to MTE's and Tyler's and MoneyBox's rights as successor-in-interest to Cash Today pursuant to the agreement for sale of the Purchased ATM Assets.

86.     The actions displaced MoneyBox from its right to dominion and control over the remaining ATM Assets and Non-Purchased ATM Assets, including the right to access ATM machines, the functional ability to maintain relationships with ATM customers, and the right to receive the surcharges and fees associated with an owner of the Purchased ATM Assets.

87.     MTE and Tyler took these wrongful actions without notice to MoneyBox and without any right to take these wrongful actions.

88.     By various verbal and written communications, MoneyBox made demand that MTE and Tyler discontinue these wrongful actions.

89.     MTE and Tyler refused.

90.     By letter from the undersigned attorney dated February 18, 2021, MoneyBox made additional demand upon MTE and Tyler to discontinue these wrongful actions.

91.     MTE and Tyler continued to refuse.

92.     MTE and Tyler are exercising wrongful dominion and control over the interests and profits relating to the Purchased ATM Assets to the wrongful exclusion of MoneyBox.

93.     Upon information and belief, MTE and Tyler, directly or through agents, are exercising wrongful dominion and control over the interests and profits relating to the Non-Purchased ATM Assets to the wrongful exclusion of MoneyBox.

94.     MTE's and Tyler's wrongful actions have interfered with MoneyBox's business relationships and otherwise caused MoneyBox significant damage, including incurring attorneys' fees and costs.

95.     MTE's and Tyler's failure to document transfer of the Purchased ATM Assets and interference with MoneyBox's attempts to sell the remaining Purchased ATM Assets and the Non-Purchased ATM Assets disrupted sale of the remaining Purchased ATM Assets and the Non-Purchased ATM Assets by MoneyBox.

96.     MTE and Tyler's various wrongful actions were and are intentional, willful, outrageous, and malicious.

97.     MoneyBox's non-litigation attempts to persuade MTE and Tyler to discontinue their wrongful actions and provide appropriate money damages to MoneyBox have not been successful.

## COUNT I
### (Breach of Contract – MTE)

98.     The Plaintiffs[1] re-allege all above-stated allegations by incorporation as if asserted in this Count.

99.     MTE and Cash Today entered into an express contract as more particularly identified above relating to MTE's sale and Cash Today's purchase of the Purchased ATM Assets.

100.     Both MTE and Cash Today had the capacity to enter into the express contract.

101.     MTE and Cash Today reached mutual agreement with regard to sale and purchase of the Purchased ATM Assets as more particularly identified above.

102.     Cash Today provided valid consideration in the form of payment of $615,000.00, plus the amount of the additional cash in circulation, to MTE for purchase of the Purchased ATM Assets.

103.     Cash Today fully performed all obligations relating to the express contract.

104.     MTE materially defaulted on its obligations relating to the express contract as more particularly identified above.

105.     MTE's material defaults have caused Plaintiffs damages.

WHEREFORE, Plaintiffs respectfully request that this Court enter judgment on Count I against MTE awarding Plaintiffs monetary judgment in the amount of all damages caused by MTE's breaches of contract, which is no less than the value of the Purchased ATM Assets not fully transferred by MTE to Cash Today or over which MTE and Tyler ultimately exercised dominion and control to the exclusion of Plaintiffs, plus all interests and profits generated by the

---

[1] Each of Cash Today and MoneyBox seek recovery on this and all other Counts.  No non-duplicative recovery is sought, but Cash Today and MoneyBox collectively seek recovery against Defendants for all damages caused to the extent only that each continues to own rights relating to the actions taken and damages caused.

Purchased ATM Assets not provided to Plaintiffs due to the actions of MTE and Tyler, plus the imposition of an equitable lien or constructive trust over the remaining Purchased ATM Assets and all interests and profits relating thereto, plus pre-judgment and post-judgment interest, plus attorneys' fees and costs, plus punitive damages, plus all other damages caused by MTE's failure to perform pursuant to the contract to sell the Purchased ATM Assets and afterward act consistently with that contract, plus such other relief as is just and appropriate under the circumstances.

**COUNT II**
**(Fraud and Fraudulent Misrepresentation - MTE and Tyler)**

106.    The Plaintiffs re-allege all above-stated allegations by incorporation as if asserted in this Count.

107.    MTE and Tyler represented to Cash Today that an express contract existed for MTE to sell and Cash Today to purchase the Purchased ATM Assets pursuant to the terms of the Asset Purchase Agreement and as otherwise stated above.

108.    MTE and Tyler represented to Cash Today that it agreed to sell the Purchased ATM Assets to Cash Today pursuant to the terms of the Asset Purchase Agreement and as otherwise stated above, including that in consideration of Cash Today's payment of $615,000.00, plus the amount of additional cash in circulation, MTE would sell and fully transfer the Purchased ATM Assets to Cash Today.

109.    MTE and Tyler represented that the transaction by and between MTE and Cash Today that closed on or about March 13, 2019 was a sale of the Purchased ATM Assets by MTE to Cash Today.

110.    To the extent that MTE and Tyler deny herein that an express contract existed between MTE and Cash Today for sale of the Purchased ATM Assets, MTE's and Tyler's

representations to Cash Today relating to the parties' transaction were false.

111.    To the extent that MTE and Tyler deny herein that an express contract existed between MTE and Cash Today for sale of the Purchased ATM Assets, MTE's and Tyler's misrepresentations to Cash Today relating to the parties' transaction were material.

112.    To the extent that MTE and Tyler deny herein that an express contract existed between MTE and Cash Today for sale of the Purchased ATM Assets, MTE and Tyler knew that their representations to Cash Today relating to the parties' transaction were false.

113.    To the extent that MTE and Tyler deny herein that an express contract existed between MTE and Cash Today for sale of the Purchased ATM Assets, MTE and Tyler made the misrepresentations relating to the parties' transaction with the intention that Cash Today would act upon the misrepresentations, including by making payment of $615,000.00, plus the amount of additional cash in circulation.

114.    To the extent that MTE and Tyler deny herein that an express contract existed between MTE and Cash Today for sale of the Purchased ATM Assets, Cash Today did not know that MTE's and Tyler's representations relating to the parties' transaction were false.

115.    To the extent that MTE and Tyler deny herein that an express contract existed between MTE and Cash Today for sale of the Purchased ATM Assets, Cash Today reasonably relied upon MTE's and Tyler's misrepresentations relating to the parties' transaction in making payment of $615,000.00, plus the amount of additional cash in circulation, to purchase the Purchased ATM Assets.

116.    To the extent that MTE and Tyler deny herein that an express contract existed between MTE and Cash Today for sale of the Purchased ATM Assets, MTE and Tyler had an obligation not to make materially false representations to Cash Today relating to the parties'

transaction.

117.     MTE's and Tyler's misrepresentations relating to the parties' transaction, and Cash Today's actions taken in reasonable reliance thereon, caused Cash Today damage.

WHEREFORE, Plaintiffs respectfully request that this Court enter judgment on Count II against MTE and Tyler awarding Plaintiffs monetary judgment in the amount of all damages caused by MTE's and Tyler's fraudulent misrepresentations, which is no less than the value of the Purchased ATM Assets not fully transferred by MTE to Cash Today or over which MTE and Tyler ultimately exercised dominion and control to the exclusion of Plaintiffs, plus all interests and profits generated by the Purchased ATM Assets not provided to Plaintiffs due to the actions of MTE and Tyler, plus the imposition of an equitable lien or constructive trust over the remaining Purchased ATM Assets and all interests and profits relating thereto, plus pre-judgment and post-judgment interest, plus attorneys' fees and costs, plus punitive damages, plus all other damages caused by MTE's and Tyler's misrepresentations, plus such other relief as is just and appropriate under the circumstances.

### COUNT III
**(Equitable Rescission - MTE)**

118.     Plaintiffs re-allege all above-stated allegations by incorporation as if asserted in this Count.

119.     To the extent that MTE and Tyler deny herein that an express contract existed between MTE and Cash Today for sale of the Purchased ATM Assets, MTE's and Tyler's materially false representations relating to the parties' transaction and Cash Today's actions taken in reasonable reliance on those materially false representations alternatively entitle Plaintiffs to equitable rescission of the express contract between MTE and Cash Today relating to the Purchased ATM Assets.

WHEREFORE, the Plaintiffs alternatively respectfully request that this Court enter judgment on Count III against MTE, equitably rescind the parties' contract, place MTE and Plaintiffs as close as possible to the position and interests they occupied and held prior to the parties' contract, plus pre-judgment and post-judgment interest, plus attorneys' fees and costs, plus punitive damages, plus such other relief as is just and appropriate under the circumstances.

## COUNT IV
### (Rescission - Mutual Mistake - MTE)

120.    The Plaintiffs re-allege all above-stated allegations by incorporation as if assert in this Count.

121.    Alternatively, if MTE did not intend to sell the Purchased ATM Assets to Cash Today in consideration of the payment of $615,000.00, plus the amount of additional cash in circulation, MTE and Cash Today mutually mistook the material terms of the parties' contract and did not reach a meeting of the minds.

WHEREFORE, the Plaintiffs alternatively respectfully request that this Court enter judgment on Count IV against MTE, deem the parties' contract rescinded based on mutual mistake or that no contract existed due to the parties not reaching a meeting of the minds on material terms, place MTE and Plaintiffs as close as possible to the position and interests they occupied and held prior to the parties' contract, plus pre-judgment and post-judgment interest, plus attorneys' fees and costs, plus punitive damages, plus such other relief as is just and appropriate under the circumstances.

## COUNT V
### (Unjust Enrichment - MTE)

122.    The Plaintiffs re-allege all above-stated allegations by incorporation as if asserted in this Count.

123.    Alternatively, to the extent that no express contract existed between MTE and Cash Today, Cash Today conferred the benefit of $615,000.00, plus the amount of additional cash in circulation, on MTE.

124.    The $615,00.00, plus the amount of the additional cash in circulation, benefit conferred to MTE was at the expense of Cash Today to the extent that MTE did not transfer the Purchased ATM Assets to Cash Today.

125.    MTE has an appreciation of the fact of the benefit conferred on MTE by Cash Today.

126.    Acceptable and retention of the full benefit under the circumstances without payment and restitution by MTE would be inequitable.

WHEREFORE, the Plaintiffs alternatively respectfully request that this Court enter judgment on Count V against MTE, award Plaintiffs damages in the amount that Cash Today conferred inequitable benefit on MTE relating to the Purchased ATM Assets, plus pre-judgment and post-judgment interest, plus attorneys' fees and costs, plus punitive damages, plus such other relief as is just and appropriate under the circumstances.

<u>**COUNT VI**</u>
**(Tortious Interference with Business Relationships - MTE and Tyler)**

127.    The Plaintiffs re-allege all above-stated allegations by incorporation as if asserted in this Count.

128.    Plaintiffs had valid contracts and business relationships with their ATM customers and other third parties relating to the Purchased ATM Assets and the Non-Purchased ATM Assets.

129.    MTE and Tyler knew that Plaintiffs had valid contracts and business relationships with their ATM customers and other third parties relating to the Purchased ATM Assets and the

Non-Purchased ATM Assets.

130.    MTE and Tyler intentionally interfered with Plaintiffs' valid contracts and business relationships with their ATM customers and other third parties relating to the Purchased ATM Assets and the Non-Purchased ATM Assets.

131.    MTE and Tyler disrupted Plaintiff's business relationships with their ATM customers and other third parties relating to the Purchased ATM Assets and the Non-Purchased ATM Assets.

132.    MTE and Tyler had no justification for intentionally interfering with Plaintiffs' valid contracts and business relationships with their ATM customers and other third parties relating to the Purchased ATM Assets and the Non-Purchased ATM Assets.

133.    MTE and Tyler had no justification for disrupting Plaintiffs' business relationships with their ATM customers and other third parties relating to the Purchased ATM Assets and the Non-Purchased ATM Assets.

134.    MTE's and Tyler's intentional interference and disruption of Plaintiffs' contracts and business relationships with their ATM customers and other third parties relating to the Purchased ATM Assets and the Non-Purchased ATM Assets caused Plaintiffs damage.

135.    Plaintiffs had prospective business relationships with prospective purchasers of the Purchased ATM Assets and the Non-Purchased ATM Assets.

136.    MTE and Tyler knew that Plaintiffs had prospective business relationships with prospective purchasers of the Purchased ATM Assets and the Non-Purchased ATM Assets.

137.    MTE and Tyler intentionally interfered with Plaintiffs' prospective business relationships with prospective purchasers of the Purchased ATM Assets and the Non-Purchased ATM Assets.

138.    MTE and Tyler disrupted Plaintiff's prospective business relationships with prospective purchasers of the Purchased ATM Assets and the Non-Purchased ATM Assets.

139.    MTE and Tyler had no justification for intentionally interfering with Plaintiffs' prospective business relationships with prospective purchasers of the Purchased ATM Assets and the Non-Purchased ATM Assets.

140.    MTE and Tyler had no justification for disrupting Plaintiffs' prospective business relationships with prospective purchasers of the Purchased ATM Assets and the Non-Purchased ATM Assets.

141.    MTE's and Tyler's intentional interference and disruption of Plaintiffs' prospective business relationships with prospective purchasers of the Purchased ATM Assets and the Non-Purchased ATM Assets caused Plaintiffs damage.

WHEREFORE, Plaintiffs respectfully request that this Court enter judgment on Count VI against MTE and Tyler awarding Plaintiffs monetary judgment in the amount of all damages caused by MTE's and Tyler's intentional interference with business relationships, which is no less than the value of the Purchased ATM Assets not fully transferred by MTE to Cash Today or over which MTE and Tyler ultimately exercised dominion and control to the exclusion of Plaintiffs, plus the value of the Non-Purchased Assets, plus all interests and profits generated by the Purchased ATM Assets and Non-Purchased ATM Assets not provided to Plaintiffs due to the actions of MTE and Tyler, plus the imposition of an equitable lien or constructive trust over the remaining Purchased ATM Assets and Non-Purchased ATM Assets and all interests and profits relating thereto, plus pre-judgment and post-judgment interest, plus attorneys' fees and costs, plus punitive damages, plus all other damages caused by MTE's and Tyler's intentional interference, plus such other relief as is just and appropriate under the circumstances.

## COUNT VII
### (Conversion - MTE and Tyler)

142.     The Plaintiffs re-allege all above-stated allegations by incorporation as if asserted in this Count.

143.     MTE and Tyler exercised unauthorized and wrongful dominion and control over the Purchased ATM Assets and Non-Purchased Assets and all related property and ownership interests of Plaintiffs by, beginning on or about November 17, 2020, exercising dominion and control over the Purchased ATM Assets and the Non-Purchased ATM Assets, including obtaining access to ATM machines, contacting ATM customers, and giving direction to SwypCo to pay the surcharges and fees associated with an owner of the Purchased ATM Assets to MTE or Tyler.

144.     Upon information and belief, MTE and Tyler also, either directly or through agents, exercised dominion and control over the Non-Purchased ATM Assets and related property and ownership interests of MoneyBox, including obtaining access to ATM machines, contacting ATM customers, and giving direction to SwypCo that MoneyBox no longer receive the surcharges and fees associated with an owner of the Non-Purchased Assets.

145.     By various verbal and written communications, Cash Today and MoneyBox made demand that MTE and Tyler discontinue these wrongful actions.

146.     MTE and Tyler refused.

147.     By letter from the undersigned attorney dated February 18, 2021, MoneyBox made additional demand upon MTE and Tyler to discontinue these wrongful actions.

148.     MTE and Tyler continued to refuse.

149.     MTE and Tyler have and are exercising wrongful dominion and control over the interests and profits relating to the Purchased ATM Assets to the wrongful exclusion of

MoneyBox.

150.    Upon information and belief, MTE and Tyler, directly or through agents, are exercising wrongful dominion and control over the interests and profits relating to the Non-Purchased ATM Assets to the wrongful exclusion of MoneyBox.

151.    MTE and Tyler intentionally exercised wrongful dominion and control over the Purchased ATM Assets and, upon information and belief, the Non-Purchased ATM Assets.

152.    MTE and Tyler exercised wrongful dominion and control over the Purchased ATM Assets and, upon information and belief, the Non-Purchased ATM assets to the exclusion of Plaintiff's right to possession, dominion and control, and interests and profits from the Purchased ATM Assets and Non-Purchased ATM Assets.

153.    MTE's and Tyler's wrongful actions have caused Plaintiffs damages.

WHEREFORE, Plaintiffs respectfully request that this Court enter judgment on Count VII against MTE and Tyler awarding Plaintiffs monetary judgment in the amount of all damages caused by MTE's and Tyler's wrongful conversion, which is no less than the value of the Purchased ATM Assets not fully transferred by MTE to Cash Today or over which MTE ultimately exercised dominion and control to the exclusion of Plaintiffs, plus the value of the Non-Purchased Assets, plus all interests and profits generated by the Purchased ATM Assets and Non-Purchased ATM Assets not provided to Plaintiffs due to the actions of MTE and Tyler, plus the imposition of an equitable lien or constructive trust over the remaining Purchased ATM Assets and Non-Purchased ATM Assets and all interests and profits relating thereto, plus pre-judgment and post-judgment interest, plus attorneys' fees and costs, plus punitive damages, plus all other damages caused by MTE's and Tyler's wrongful conversion, plus such other relief as is just and appropriate under the circumstances.

## COUNT VIII
### (Deceptive Trade Practices - MTE and Tyler)

154.     The Plaintiffs re-allege all above-stated allegations by incorporation as if asserted in this Count.

155.     As detailed above, MTE and Tyler knowingly made false representations with respect to the sale transaction between MTE and Cash Today.

156.     As detailed above, MTE and Tyler failed to make delivery of the goods and services agreed to be sold as part of the transaction between MTE and Cash Today.

157.     As detailed above, MTE and Tyler failed to disclose material facts in connection with the transaction between MTE and Cash Today.

158.     Cash Today and, as its successor-in-interest, MoneyBox is a victim of MTE's and Tyler's fraud and failures with respect to the transaction between MTE and Cash Today.

159.     Cash Today and MoneyBox have been directly harmed by MTE's and Tyler's fraud and failures with respect to the transaction between MTE and Cash Today.

WHEREFORE, Plaintiffs respectfully request that this Court enter judgment on Count VIII against MTE and Tyler awarding Plaintiffs monetary judgment in the amount of all damages caused by MTE's and Tyler's deceptive trade practices, which is no less than the value of the Purchased ATM Assets not fully transferred by MTE to Cash Today or over which MTE ultimately exercised dominion and control to the exclusion of Plaintiffs, plus the value of the Non-Purchased Assets, plus all interests and profits generated by the Purchased ATM Assets and Non-Purchased ATM Assets not provided to Plaintiffs due to the actions of MTE and Tyler, plus the imposition of an equitable lien or constructive trust over the remaining Purchased ATM Assets and Non-Purchased ATM Assets and all interests and profits relating thereto, plus pre-judgment and post-judgment interest, plus attorneys' fees and costs, plus punitive damages, plus

statutory damages, plus all other damages caused by MTE's and Tyler's deceptive trade practices, plus such other relief as is just and appropriate under the circumstances.[2]

Respectfully submitted,

DENTONS US LLP

By: /s/ Robert A. Hammeke
Robert A. Hammeke   KS Bar 19707
4520 Main Street, Suite 1100
Kansas City, MO 64111
Telephone: (816) 460-2400
Facsimile: (816) 531-7545
robert.hammeke@dentons.com

ATTORNEYS FOR PLAINTIFFS

---

[2] Plaintiffs reserve the right to assert additional claims against MTE and Tyler, add as additional parties any co-conspirators with respect to MTE's and Tyler's wrongful actions, or add as additional parties any parties that took wrongful actions that caused damage to Plaintiffs.