IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

CASH TODAY LLC, et al.,

    *Plaintiffs,*

vs.

                                                Case No. 21-2360-EFM

MTE LLC, et al.,

    *Defendants.*

**MEMORANDUM AND ORDER**

Before the Court is Plaintiffs Cash Today LLC ("Cash Today")'s and Moneybox ATM Nevada, LLC ("Moneybox")'s Motion for Partial Summary Judgment (Doc. 125). Defendants MTE LLC ("MTE") and Michael W. Tyler, Sr. ("Tyler") oppose the Motion. For the following reasons, the Court grants in part and denies in part Plaintiffs' Motion.

## I.     Factual and Procedural Background

As an initial matter, the Court notes that this case is fraught with objections by both parties. The Court will address the relevant objections within the footnotes as they arise.

Cash Today is an Arizona limited liability company whose sole member is Sue Klopf. MoneyBox is a Nevada limited liability company whose sole member is Patrick Klopf, Sue Klopf's son. MTE is a Kansas limited liability company whose controlling member and manager is Tyler.

Prior to March 2019, Tyler and Michael Klopf[1] began discussing the possible sale of MTE's ATM assets to either Cash Today or Michael (the facts are not clear on this). Patrick participated in some of these sale discussions.

Defendants contend that discussions with Michael moved from the possible sale of ATM assets to the sale of vault account[2] proceeds.[3] Plaintiffs contend that Defendants agreed to sell the ATM assets to Cash Today. That alleged agreement is memorialized in a one-page document, the Asset Purchase Agreement ("APA"), dated March 11, 2019.[4] The APA was signed by Sue on behalf of Cash Today. Michael texted a picture of the APA signed by Sue to Tyler.[5] Defendants

---

[1] Michael is Sue's son and Patrick's brother. He died on July 20, 2020.

[2] A vault account is a bank account utilized by an ATM owner or operator to maintain the cash utilized to supply and re-load ATM machine locations. After an ATM transaction, the customer's bank repays the amount of funds dispensed to the vault account. Then funds are withdrawn from the vault account to re-load the ATM machines. Revenue that is generated by the ATM cash provider is paid and deposited into a separate account referred to as the surcharge account.

[3] Defendants rely on Exhibit 1 to the Amended Memorandum in Opposition (Doc. 132-1) for these contentions. Plaintiffs object to Exhibit 1. Exhibit 1 is an affidavit of Tyler that explains the ATM business operations, the nature of discussions between MTE and Michael, the details of an agreement between MTE and Michael, the actions Michael took after the agreement, and the actions Patrick took after Michael's death. Plaintiffs object to Defendants' Exhibit 1 arguing that it is contradictory and self-serving. However, "contradictions in a witness's statements do not alone, preclude the Court from considering such testimony." *Argo v. Blue Cross Blue Shield of Kansas, Inc.*, 2005 WL 466212, at *2 (D. Kan. Feb. 4, 2005). Plaintiffs do not argue that Tyler's affidavit contradicts Tyler's previous sworn testimony. Instead, they argue that Tyler's affidavit contradicts a proposed pretrial order and Patrick's deposition testimony. Because this is not enough for the Court to disregard Tyler's affidavit, the Court overrules Plaintiffs' objection.

[4] Plaintiffs rely on Exhibit A to the Memorandum in Support (Doc. 126-1) for these contentions. Defendants object to and move to strike Exhibit A. Exhibit A is an affidavit of Patrick that discusses talks concerning the sale of MTE's ATM assets, memorializing of the agreement in the APA, actions taken by Cash Today and Michael in furtherance of the agreement, MTE's and Tyler's actions, and events that occurred after Michael's death. Defendants object to and move to strike Plaintiffs' Exhibit A arguing that Patrick lacks the requisite personal knowledge. Under Federal Rule of Evidence 602, a witness must have personal knowledge of a matter in order to testify about it. Patrick is the sole member of Moneybox and was included in discussions of the possible sale of MTE's ATM assets. Thus, the Court determines that Patrick has the personal knowledge to testify to the events concerning the alleged agreement. Defendants also object and move to strike paragraphs 92 through 96 of Plaintiffs' Exhibit A. Those paragraphs reference Moneybox's accounts and Patrick is the sole member of Moneybox. Because Patrick has the requisite personal knowledge, the Court overrules Defendants' objection and motion to strike.

[5] Plaintiffs rely on Exhibit C to the Memorandum in Support (Doc. 126-10) for these contentions. Defendants object to Exhibit C. Exhibit C is a deposition of Tyler that discusses whether he received the text from Michael. Defendants object to and move to strike Plaintiffs' Exhibit C arguing that it is an unofficial copy of the deposition. Plaintiffs explain that they attached an unofficial copy because the official copy was not complete at the time they

deny reviewing, signing, or agreeing to the APA. Defendants instead assert that Michael indicated he was ready to purchase the vault account proceeds of $615,000 from MTE.

Later that day, Tyler sent a text message to Michael providing wire transfer instructions. Sue, on behalf of Cash Today, made two wire transfer payments of $470,000 and $145,000 to MTE's account at the Security Bank of Kansas City, Kansas. Tyler, on behalf of MTE, confirmed receipt of the $615,000 via a text to Michael and subsequently messaged him, "I'll see you in the morning." Plaintiffs contend that Tyler's text implied that he would travel to Las Vegas to meet with Michael about the agreement to purchase the ATM assets. Defendants contend, however, that the text message implied that Tyler would travel to Las Vegas to meet with Michael about the agreement to purchase the vault account proceeds.

On March 19, 2019, Michael was added as an authorized signer to MTE's vault account at Nevada State Bank in Las Vegas, Nevada. Michael utilized MTE's vault account to provide the cash necessary for operation of ATMs in Las Vegas, Nevada.

Plaintiffs contend that MTE improperly retained control and ownership over the ATM assets in violation of the APA. Defendants assert that they relinquished control the $615,000 vault account and circulating proceeds to Michael pursuant to the agreement between Michael and MTE.

On August 19, 2021, Cash Today and Moneybox filed a complaint against MTE and Tyler alleging various claims—breach of contract, fraud and fraudulent misrepresentation, equitable recission, mutual mistake, unjust enrichment, tortious interference with business relationships, conversion, and deceptive trade practices. Plaintiffs filed a Motion for Partial Summary Judgment

---

filed their Motion. Defendants do not dispute the substance of Exhibit C and include the official copy of Tyler's deposition in their Response. Thus, the Court overrules Defendants' objection and motion to strike Plaintiffs' Exhibit C.

on May 17, 2023.[6] Defendants filed their Amended Response on June 13, 2023.[7] On June 30, 2023, Plaintiffs filed their Reply.

## II.     Legal Standard

Summary judgment is appropriate if the moving party demonstrates that there is no genuine issue as to any material fact, and the movant is entitled to judgment as a matter of law.[8] A fact is "material" when it is essential to the claim, and issues of fact are "genuine" if the proffered evidence permits a reasonable jury to decide the issue in either party's favor.[9] The movant bears the initial burden of proof and must show the lack of evidence on an essential element of the claim.[10] The nonmovant must then bring forth specific facts showing a genuine issue for trial.[11] These facts must be clearly identified through affidavits, deposition transcripts, or incorporated

---

[6] Defendants object to Plaintiffs' briefing asserting it violates D. Kan. Rule 7.1(d)(2)'s page limit of forty pages. However, the table of contents are not included in the page limit and Plaintiffs' substantive brief is 36 pages. Thus, the Court overrules Defendants' objection. Nonetheless, the Court notes that Plaintiffs use at least two different font sizes sporadically throughout their Reply, one of which is certainly smaller than the font restrictions imposed by D. Kan. Rule 5.1(a). This gives the appearance of gamesmanship and the Court cautions Plaintiffs from continuing to do so in the future.

Additionally, Defendants object to and move to strike Plaintiffs' Exhibits G, G-1 through G-4 to the Memorandum in Support (Docs. 126-14, 15–19). Plaintiff's Exhibit G is an affidavit of Deniss Desmond—the accountant for Cash Today and Moneybox—that details the amount of cash turned over by MTE and the amount of cash MTE still owes. Exhibits G-1 through G-4 are records of cash load information and vault account bank statements. The Court does not rely upon any facts from these exhibits in this order, and thus, declines to address Defendants' objection and motion to strike.

[7] Plaintiffs object to Defendants' structure of their response to Plaintiffs' statement facts section and assert through example what they deem to be the correct format. However, neither of the parties' interpretation of the formatting of a response to facts is incorrect. Thus, the Court overrules the objection.

[8] Fed. R. Civ. P. 56(a).

[9] *Haynes v. Level 3 Commc'ns, LLC*, 456 F.3d 1215, 1219 (10th Cir. 2006) (citing *Bennett v. Quark, Inc.*, 258 F.3d 1220, 1224 (10th Cir. 2001)).

[10] *Thom v. Bristol-Myers Squibb Co.*, 353 F.3d 848, 851 (10th Cir. 2003) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986)).

[11] *Garrison v. Gambro, Inc.*, 428 F.3d 933, 935 (10th Cir. 2005) (citation omitted).

exhibits—conclusory allegations alone cannot survive a motion for summary judgment.[12] The court views all evidence and reasonable inferences in the light most favorable to the non-moving party.[13]

### III.     Analysis

Plaintiffs ask the Court to: (1) determine that Nevada substantive law applies to all the claims asserted in the Complaint; (2) grant them summary judgment on the deceptive trade practices claim arguing there are "no triable issues of fact;" and (3) grant them summary judgement on the conversion claim arguing no genuine issues of material fact preclude summary judgment. The Court will address each in turn.

**A.     Choice of Law**

The Pretrial Order dictates that Nevada law governs two of Plaintiffs' claims—tortious interference with a business relationship and conversion. However, the parties dispute whether Nevada or Kansas law should govern the remaining claims. Plaintiffs assert that Nevada law should govern, whereas Defendants argue that Kansas law should govern.

In diversity cases, federal courts apply "the substantive law of the forum state, including its choice of law rules."[14] However, when no conflict of law exists, the Court may simply apply the law of the forum state.[15]

---

[12] *Mitchell v. City of Moore*, 218 F.3d 1190, 1197 (10th Cir. 2000) (citing *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670–71 (10th Cir. 1998)).

[13] *LifeWise Master Funding v. Telebank*, 374 F.3d 917, 927 (10th Cir. 2004) (citation omitted).

[14] *Garcia v. Int'l Elevator Co.*, 358 F.3d 777, 779 (10th Cir. 2004).

[15] *Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 816 (1985).

Plaintiffs' remaining claims can be divided into tort-based, contract-based, and equity-based claims. The Court will address the choice of law rules for each group of claims to determine whether Nevada or Kansas law applies.

*1.     Tort-based claims*

The remaining tort-based claims are fraud and fraudulent misrepresentation, equitable recission based on fraudulent misrepresentation, and deceptive trade practices.[16] A federal court sitting in diversity must apply the forum state's choice-of-law rules.[17] Therefore, because this Court sits in Kansas, Kansas's choice-of-law rules determine which state's substantive law will govern Plaintiffs' tort claims.[18] In tort cases, Kansas courts have long applied the traditional *lex loci delicti* choice of law rule.[19] According to this rule, the law of the state where the tort occurred governs the merits of the litigation.[20] Where the tort occurred is where the injury was suffered.[21] Specifically, "[i]n a misrepresentation or fraudulent omission claim [the place where the tort occurred] is where the loss is sustained, not where the fraud or misrepresentations were made."[22] Thus, "the law of the state in which plaintiff felt the 'effects' of the fraud controls."[23]

Here, Plaintiffs assert that the Court should apply Nevada law because the injuries caused by Defendants alleged misrepresentations occurred in Nevada. The alleged injuries include

---

[16] The deceptive trade practices claim is based on the tortious action of misrepresentation.

[17] *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U. S. 487, 496 (1941).

[18] *See id.*

[19] *Anderson v. Commerce Constr. Servs.*, 531 F.3d 1190, 1194 (10th Cir. 2008) (interpreting Kansas law).

[20] *Id.*

[21] *Ling v. Jan's Liquors*, 237 Kan. 629, 703 P.2d 731, 735 (1985) (citation omitted).

[22] *Steele v. Ellis*, 961 F. Supp. 1458, 1463 (D. Kan. 1997) (quoting *Atchison Casting Corp. v. Dofasco, Inc.*, 889 F. Supp. 1445, 1456 (D. Kan. 1995)) (internal quotation marks omitted).

[23] *Id.* (citing *Maberry v. Said*, 911 F. Supp. 1393, 1399 (D. Kan. 1995).

Defendants' attempt to (1) dispossess Plaintiffs of the ATM assets and the revenues generated therefrom, (2) retain control over the ATM assets, and (3) obstruct Plaintiffs' customer relationships in Las Vegas, Nevada. The ATM assets are in Las Vegas, Nevada.

Defendants argue that the Court should apply Kansas law because the alleged fraud and misrepresentations pertain to the formation of the alleged contract, and, if the parties formed a contract at all, it occurred in Kansas. Defendants' argument is contrary to the law. Because the alleged injuries occurred in Nevada, the Court determines that Nevada law applies to the tort-based claims of fraud and fraudulent misrepresentation, equitable recission based on fraudulent misrepresentation, and deceptive trade practices.

### 2. *Contract-based claims*

The remaining contract-based claims are breach of contract and mutual mistake. Kansas courts use the First Restatement of Conflict of Laws to resolve choice of law issues.[24] "When the question raised by the contractual dispute goes to the substance of the obligation, Kansas courts apply the primary rule contained in section 332, *lex loci contractus*, which calls for the application of the law of the state where the contract is made."[25] Kansas courts look to the last act necessary for contract formation to determine where the contract is made.[26] However, the law of the place of performance applies if the "question goes to the manner and method of performance."[27]

First, Plaintiffs' claim for breach of contract hinges on Defendants' alleged failure to "fully transfer and turn over ownership and control over the ATM assets sold and by re-asserting

---

[24] *Moses v. Halstead*, 581 F.3d 1248, 1252 (10th Cir. 2009) (citing *ARY Jewelers, LLC v. Krigel*, 277 Kan. 464, 481, 85 P.3d 1151, 1161 (2004)).

[25] *Id*. (citing *Layne Christensen Co. v. Zurich Canada*, 30 Kan.App.2d 128, 142, 38 P.3d 757, 766–67 (2002)).

[26] *Smith v. Hawkeye-Security Ins. Co.*, 842 F. Supp. 1373, 1375 (D. Kan. 1994).

[27] *Moses*, 581 F.3d at 1252.

ownership and control over the ATM assets after they were sold."[28] This claim falls under the law of the place of performance analysis because Plaintiffs allege that Defendants failed to perform their obligations.[29] Plaintiffs argue that the subject of the alleged contract, the ATM assets, were located in Nevada, and all significant performances or lack of performance occurred in Nevada. Defendants assert that Kansas law is the correct law to apply because the formation of the alleged contract and the representations made in the formation of the contract occurred in Kansas. However, as noted above, the breach of contract claim does not focus upon the formation of a contract but on Defendants' alleged failed performance. Nevada is where the performance, or the lack thereof, of contractual obligations occurred. Thus, the Court determines Nevada law applies to the breach of contract claim.

The second contract-based claim, mutual mistake, falls under the *lex loci contractus* analysis because it focuses upon whether the parties "mutually mistook the material terms of the parties' contract and did not reach a meeting of the minds."[30] The parties disagree significantly about if a contract was formed, where a contract was formed, and what performance obligations the contract imposed on each party. Plaintiffs assert that the contract was formed upon initial performance in Nevada pursuant to the terms of the APA, and thus Nevada law applies. Defendants assert that Kansas law applies because the claim relates to the formation of an alleged contract and the "representations made in the formation of the alleged contract . . . took place in Kansas." Defendants offer no further explanation or authority.

---

[28] Pl. Ex. B to the Memorandum in Support (Doc. 126-9).

[29] *Id*. at 1253 ("In general, fulfillment of a contractual obligation goes to the manner and method of performance by the party charged with the obligation.").

[30] Pl. Ex. B to the Memorandum in Support (Doc. 126-9).

While the representations made in the formation of the alleged contract may have occurred in Kansas, the Court is unconvinced that the alleged contract itself was formed in Kansas. The APA was not the last act needed for the formation of the alleged contract because Defendants never signed the APA. It is more likely that the initial performance in Nevada was the last act needed for the formation of the alleged contract. Therefore, the Court determines that Nevada law applies to the mutual mistake claim.

### 3. Equity-based claim

The remaining equity-based claim is Plaintiffs' unjust enrichment claim. To resolve choice of law issues for unjust enrichment claims, the Kansas courts look to "the place where the benefit or enrichment was received, the place where the act conferring the benefit or enrichment was done, the domicile or residence of the parties, and the location of the [land or chattel] at the time the act conferring the benefit or enrichment occurred."[31]

Here, Plaintiffs assert their payment of $650,000 to MTE for ATM assets in Nevada unjustly enriched Defendants. Plaintiffs sent the payment from Cash Today's bank account in Arizona to MTE's bank account at Security Bank of Kansas City in Kansas City, Kansas. Thus, because MTE received payment in Kansas, the first factor weighs in favor of Kansas law applying. Further, the second factor weighs in favor of Arizona law applying because the wire transfer payment originated from Cash Today's bank account in Arizona.

Next, MTE is a Kansas limited liability company and Tyler resides in Kansas. Cash Today is an Arizona limited liability company whose sole member, Sue Klopf, resides in Iowa. Moneybox is a Nevada limited liability company whose sole member, Patrick Klopf, resides in Iowa. The

---

[31] *Sunbird Air Servs., Inc. v. Beech Aircraft Corp.*, 1992 WL 193661, at *7 (D. Kan. July 15, 1992) (utilizing Kansas' choice of law framework for unjust enrichment claims).

third factor weighs slightly in favor of Kansas law applying, as two of the four parties are domiciled in Kansas.

Finally, the ATM assets are physically located in Las Vegas, Nevada. Consequently, the fourth factor weighs in favor of Nevada law applying.

Of the four choice of law factors courts consider, two weigh in favor of applying Kansas law and only one factor weighs in favor of applying Nevada law. Therefore, the Court determines that Kansas law applies to the unjust enrichment claim.

**B.     Deceptive trade practices claim**

Plaintiffs argue that they are entitled to summary judgment on the deceptive trade practices claims because there are "no triable issues of fact." Under the Nevada Deceptive Trade Practices Act ("NDTPA"), "[a]n action may be brought by any person who is a victim of consumer fraud."[32] The NDTPA does not restrict "victims" to only consumers; rather, business competitors may be considered "victims" for the purposes of the statute.[33] To successfully prove a claim under the NDTPA, a plaintiff must demonstrate that "(1) an act of consumer fraud by the defendant (2) caused (3) damage to the plaintiff."[34]

The NDTPA's definition of consumer fraud includes "a deceptive trade practice as defined in NRS 598.0915 to 598.0925, inclusive."[35] "A person engages in a 'deceptive trade practice' if, in the course of his or her business or occupation, he or she . . . knowingly makes [a] false

---

[32] Nev. Rev. Stat. § 41.600(1).

[33] *S. Serv. Corp. v. Excel Bldg. Servs., Inc.*, 617 F. Supp. 2d 1097, 1099–100 (D. Nev. 2007) (interpreting Nevada law).

[34] *Picus v. Wal-Mart Stores, Inc.*, 256 F.R.D. 651, 658 (D. Nev. 2009).

[35] Nev. Rev. Stat. § 41.600(2)(e).

representation in a transaction."[36] Under the NDTPA, "knowingly" "does not require that the defendant intend to deceive with the act or omission, or even know of the prohibition against the act or omission, but simply that the defendant is aware that the facts exist that constitute the act or omission."[37]

Here, Plaintiffs rely upon NRS § 598.0915(15) to bring deceptive trade practices claims against Defendants. For the Court to consider Plaintiffs' deceptive trades practices claims, there must be a "transaction" for the Court to look at to determine whether Defendants "knowingly" made a false representation.[38] Plaintiffs contend that there was a contract for the purchase for all of MTE's ATM assets by Cash Today. In contrast, Defendants contend that although the terms of a possible sale of all MTE's ATM assets were discussed, the contract was ultimately for the purchase of vault cash by Michael Klopf. Thus, a genuine dispute of material fact exists as to whether there was a contract between Defendants and Plaintiffs. The existence of a contract is material to Plaintiffs' deceptive trade practices claims, and thus, a genuine dispute of material fact precludes summary judgment. Accordingly, the Court denies Plaintiff's Motion.

C.   **Conversion claim**

Plaintiffs ask the Court to grant summary judgment in their favor on the conversion claim against Defendants because there are no genuine issues of material fact. Under Nevada law,

---

[36] Nev. Rev. Stat. § 598.0915(15).

[37] *Poole v. Nevada Auto Dealership Invs., LLC*, 135 Nev. 280, 285, 449 P.3d 479, 483 (Nev. App. 2019) ("For example, a defendant auto dealer 'knowingly' makes a false representation of a car's condition to a plaintiff consumer if the car has been damaged in a collision and the dealer is aware that tit represented to the consumer that the car has never been damaged in a collision. '[K]nowingly' does not require that the dealer intended to deceive the consumer or knew of such a misrepresentation's prohibition—the defendant must simply be aware of the fact that it represented that the car had never been damaged in a collision."); *Troy Cap. LLC v. Patenaude & Felix APC*, 2022 WL 706898, at *6 (D. Nev. Mar. 1, 2022) (discussing that "knowingly" does not require more than general intent).

[38] *See Tristan v. Bank of Am.*, 2023 WL 8168848, at *7 (C.D. Cal. Oct. 26, 2023) (dismissing a NDTPA claim because the plaintiff failed to allege he entered into a "transaction" with the defendant).

"[c]onversion is a 'distinct act of dominion wrongfully exerted over another's personal property.' "[39] "[C]onversion is an act of general intent, which does not require wrongful intent and is not excused by care, good faith, or lack of knowledge."[40] The manual or physical taking of property is not a requirement of conversion.[41] "Rather, conversion is the unlawful deprivation of an owner's property by another who assumes *dominion* over the property."[42] To prevail on a conversion claim, a plaintiff must establish that "the defendant wrongfully withheld specifically identifiable money that is due."[43]

However, "[t]he economic loss doctrine prevents a plaintiff from recovering on an unintentional tort claim for purely economic losses."[44] This doctrine distinguishes between contract law and tort law.[45] "A party that has a contractual expectation of payment cannot duplicate the breach of contract claim with a conversion claim."[46] If the conversion claim is brought under an "independent duty imposed under tort law" it is not barred as duplicative under the economic

---

[39] *Gaia Ethnobotanical, LLC v. T1 Payments LLC*, 2024 WL 987981, at *5 (D. Nev. Mar. 6, 2024) (quoting *Evans v. Dean Witter Reynolds, Inc.*, 5 P.3d 1043, 1048 (Nev. 2000)).

[40] *Evans v. Dean Witter Reynolds, Inc.*, 116 Nev. 598, 606, 5 P.3d 1043, 1049 (2000) (citations omitted).

[41] *Gaia Ethnobotanical, LLC*, 2024 WL 987981, at *5 (citing *Bader v. Cerri*, 609 P.2d 314, 317 n.1 (Nev. 19080), overruled, in part on other grounds by *Evans*, 5 P.3d at 1050).

[42] *Id*. (citing *Studebaker Bros. Co. of Utah v. Witcher*, 195 P. 344, 340 (Nev. 1921).

[43] *Andrews v. Raphaelson*, 346 F. App'x 198, 199 (9th Cir. 2009) (citing *Larson v. B.R. Enters., Inc.*, 104 Nev. 252, 757 P.2d 354, 356 (1988)) (affirming the district court's decision to grant plaintiff's summary judgment motion on the conversion claim when defendant admitted he retained all of the sale proceeds, of which a portion rightfully belonged to plaintiff, and did so without plaintiff's consent).

[44] *Mitman v. LA1, LLC*, 2023 WL 8270780, at *5 (Nev. Nov. 29, 2023) (citing *Sadler v. PacifiCare of Nev., Inc.*, 130 Nev. 990, 996, 340 P.3d 1264, 1268 (2014)).

[45] *Id*.

[46] *United States v. JE Dunn Constr. Co.*, 2024 WL 1470398, at *11 (D. Nev. Mar. 15, 2024) (quoting *Nevada State Educ. Ass'n v. Clark Cnty. Educ. Ass'n*, 137 Nev. 76, 86 n.8, 482 P.3d 665, 674–75, 675 n.8 (Nev. 2021)) (alterations omitted).

loss doctrine.[47] A conversion claim is barred if it is brought under a contractual duty and relies on identical factual allegations to the breach of contract claim.[48]

Here, Plaintiffs bring conversion claims against Tyler and MTE. The Court will address each claim in turn.

*1. Conversion Claim against Tyler*

Plaintiffs assert that summary judgment is proper as to the conversion claim against Tyler because no issue of material fact exists. However, determining whether Defendants assumed dominion over Plaintiffs' property is inextricably intertwined with the question of whether Plaintiffs had the rights to that property. As noted above, there is a genuine dispute of material fact as to whether a contract exists between Plaintiffs and Defendants. The existence of a contract is material to Plaintiffs' conversion claims as it could establish whether Plaintiffs or Defendants had the rights to the ATM assets at issue. Thus, the Court denies Plaintiffs' Motion.

*2.      Conversion claim against MTE*

Plaintiffs again assert that summary judgment is proper as to the conversion claim against MTE because no issue of material fact exists. However, Plaintiffs also bring a breach of contract claim against MTE. Plaintiffs use identical factual allegations to support their breach of contract and conversion claims. Both claims are based on MTE maintaining control over ATM assets that Plaintiffs allegedly had the rights to. Further, both claims ask for damages in the form of expected payments from the ATM assets and attorney's fees that would be necessary to remedy the damages. Thus, Plaintiffs are seeking recovery on their conversion claim for the same alleged transgressions

---

[47] *Id.* at *10 (discussing *Giles v. General Motors Acceptance Corp.*, 494 F.3d 865, 879–80 (9th Cir. 2007)).
[48] *Id*. at *10–11.

asserted under their breach of contract claim. Accordingly, the Court finds that Plaintiffs' conversion claim is barred by the economic loss doctrine and so their motion for summary judgment is denied.

"After giving notice and a reasonable time to respond, the court may[] grant summary judgment for a nonmovant."[49] "[D]istrict courts are widely acknowledged to possess the power to enter summary judgments sua sponte, so long as the losing party was on notice that [he] had to come forward with all of [his] evidence."[50] However, district courts may still grant summary judgment sua sponte given without notice if "the losing party suffered no prejudice from the lack of notice."[51]

Here, the Court has not notified Plaintiffs that it will sua sponte grant summary judgment against Plaintiffs' conversion claim. MTE also did not give notice to Plaintiffs. MTE did not raise the economic loss doctrine issue in their Amended Response or move for summary judgment themselves. Regardless, Plaintiffs' breach of contract claim is identical to their conversion claim, and thus, is clearly barred by the economic loss doctrine. Accordingly, Plaintiffs sustain no prejudice from the absence of notice. Therefore, the Court grants summary judgment to MTE on the conversion claim.

**IT IS THEREFORE ORDERED** that Plaintiffs' Motion (Doc. 125) requesting that Nevada law be applied to all claims in this case is **GRANTED** in part. It is **DENIED** to the extent

---

[49] Fed. R. Civ. P. 56(f)(1).

[50] *Celotex Corp. v. Catrett*, 477 U.S. 317, 326 (1986).

[51] *Oldham v. O.K. Farms, Inc.*, 871 F.3d 1147, 1150 (10th Cir. 2017) ("[If] notice is lacking, we will still affirm a grant of summary judgment if the losing party suffered no prejudice from the lack of notice. If such prejudice is shown, however, then we will reverse." (citation and internal quotation marks omitted)).

that Kansas law governs the unjust enrichment claim and Nevada law governs the remaining claims.

**IT IS FURTHER ORDERED** that Plaintiffs' Motion for Partial Summary Judgment (Doc. 125) on the deceptive trade practices claim and conversion claim is **DENIED.**

**IT IS FURTHER ORDERED** that summary judgment is **GRANTED** to MTE on the conversion claim.

**IT IS SO ORDERED.**

Dated this 2nd day of May, 2024.

*Eric F. Melgren*
ERIC F. MELGREN
CHIEF UNITED STATES DISTRICT JUDGE