## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

CASH TODAY LLC, et al.,

       *Plaintiffs,*

v.

       Case No. 21-2360-EFM

MTE LLC, et al.,

       *Defendants.*

## MEMORANDUM AND ORDER

Before the Court is the issue of the amount of punitive damages to be awarded in accordance with the Court's Memorandum and Order (Doc. 186). The Court awarded judgment in favor of Plaintiffs, Cash Today, LLC ("Cash Today") and MoneyBox ATM Nevada, LLC ("MoneyBox"), against Defendants, MTE, LLC ("MTE") and Michael W. Tyler, Sr. ("Tyler"), on several claims including the tortious interference with business relationships and conversion claims. As stated in its prior Order, the Court finds that Plaintiffs are entitled to recover punitive damages from Defendants pursuant to NRS § 42.005 for the tortious interference with business relationships and conversion claims.

Plaintiffs ask this Court to award them $2,251,191.06 in punitive damages, which is three times the amount of compensatory damages—$750,397.02—awarded in the Court's Order.

Nevada law requires bifurcated proceedings for punitive damages.[1] "If punitive damages are claimed . . ., the trier of fact shall make a finding of whether such damages will be assessed. If such damages are to be assessed, a subsequent proceeding must be conducted before the same trier of fact to determine the amount of such damages to be assessed."[2] An award of punitive damages may not exceed "[t]hree times the amount of compensatory damages awarded to the plaintiff if the amount of compensatory damages is $100,000 or more."[3] The relevant considerations for a punitive damage award are "the financial position of the defendant, culpability and blameworthiness of the tortfeasor, vulnerability and injury suffered by the offended party, the extent to which the punished conduct offends the public's sense of justice and propriety, and the means which are judged necessary to deter future misconduct of this kind."[4]

The Court previously held that punitive damages were available for the tortious interference with business relationships and conversion claims, and the Court sees no needs to reiterate the evidence and legal analysis in its prior Order that led to these conclusions. Moreover, the Court conducted a hearing on May 28, 2025, to determine the amount of punitive damages to be assessed. Thus, the bifurcated proceedings requirement for punitive damages under Nevada law is satisfied.

At the hearing, both parties presented evidence and legal arguments to the Court. After reviewing the evidence and arguments presented by both parties, the record in this case, and the Court's previous Order, the Court assesses an award of $750,397.02 in punitive damages against

---

[1] NRS § 42.005(3).

[2] *Id*.

[3] NRS § 42.005(1)(a).

[4] *Bongiovi v. Sullivan*, 138 P.3d 433, 451 (Nev. 2006) (citation omitted).

Defendants. This award of punitive damages is sufficient to punish and deter Defendants' culpable conduct.

Defendants argue that the Court determined punitive damages are available only for the tortious interference with business relationships and conversion claims, and thus, the punitive damages assessed cannot exceed three times the amount of damages that were awarded under those claims. The Court awarded Plaintiffs $136,977.88 for lost revenue under the tortious interference with business relationship claim and $119,736.89 for the market value of the Las Vegas ATM assets under the conversion claim. Thus, according to Defendants, the punitive damages cannot exceed $770,144.31.

However, Defendants overlook that the Court first determined in its Order that lost profit damages under the tortious interference with business relationships claim were available for *all* of the Las Vegas ATM assets. Then, the Court awarded lost profits for only 13 of the Las Vegas ATM assets under the tortious interference with business relationships claim because it already awarded lost profit damages for the other 25 Las Vegas assets under the breach of contract claim.[5] Similarly, the Court first determined that lost profits and the market value of the assets were available as damages under the conversion claim for *all* of the Las Vegas ATM assets. Again, the Court then awarded the market value for only 13 of the Las Vegas ATM assets because the lost profits for the 13 Las Vegas ATM assets were awarded under the tortious interference with business relationships claim and the market value and lost profits for the remaining 25 Las Vegas ATM assets were already awarded under the breach of contract claim. Therefore, the Court found

---

[5] "[W]hile plaintiffs are permitted to plead alternative or different theories of relief based on the same facts, plaintiffs may not recover more than their 'total loss plus any punitive damages assessed.'" *Countrywide Home Loans, Inc. v. Thitchener*, 192 P.3d 243, 248 (Nev. 2008) (citation omitted).

damages were available regarding all 38 Las Vegas ATM assets for these claims before adjusting the damages to reflect what was already awarded under Nevada law. Consequently, the Court declines to adopt Defendants' position that punitive damages cannot exceed $770,144.31. But even if the Court adopted Defendants' position, the $750,397.02 in punitive damages the Court assesses against Defendants is less than $770,144.31. As such, Defendants' argument on this point is moot.

**IT IS THEREFORE ORDERED** that $750,397.02 in punitive damages be assessed against Defendants.

**IT IS SO ORDERED.**

Dated this 17th day of July, 2025.

ERIC F. MELGREN
CHIEF UNITED STATES DISTRICT JUDGE